Matter of Solarino v DiNapoli (2019 NY Slip Op 03124)





Matter of Solarino v DiNapoli


2019 NY Slip Op 03124


Decided on April 25, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 25, 2019

527286

[*1]In the Matter of SCOTT R. SOLARINO, Petitioner,
v
THOMAS P. DiNAPOLI, as State Comptroller, et al., Respondents.

Calendar Date: March 21, 2019

Before: Garry, P.J., Clark, Mulvey, Devine and Rumsey, JJ.


Davis & Ferber, LLP, Islandia (Christopher S. Rothemich of counsel), for petitioner.
Letitia James, Attorney General, Albany (William E. Storrs of counsel), for respondents.



MEMORANDUM AND JUDGMENT
Rumsey, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's applications for accidental and performance of duty disability retirement benefits.
In February 2013, petitioner, a police officer, filed an application for accidental disability retirement benefits alleging that he was permanently incapacitated as a result of injuries sustained to his back and neck in May 2012 when, while operating his patrol vehicle, he was struck head on by a drunk driver. That same month, petitioner's employer filed an application for performance of duty disability retirement benefits on petitioner's behalf alleging that petitioner was permanently incapacitated as the result of an in-service incident. After respondent New York State and Local Police and Fire Retirement System denied both applications, petitioner sought a hearing and redetermination. At the conclusion of the ensuing hearing, a Hearing Officer upheld the denial, finding that petitioner failed to establish that he was permanently incapacitated — in part due to the availability of reasonable treatment options. Respondent Comptroller adopted the Hearing Officer's findings and conclusions, prompting petitioner to commence this CPLR article 78 proceeding to challenge the Comptroller's determination.
As the result of certain concessions made by the Retirement System, the sole issue at the hearing was whether petitioner was permanently incapacitated from performing his duties as a police officer. "In connection with any application for accidental or performance of duty disability retirement benefits, the applicant bears the burden of proving that he or she is permanently incapacitated from the performance of his or her job duties" (Matter of London v DiNapoli, 153 AD3d 1106, 1107 [2017] [internal quotation marks and citations omitted]; accord [*2]Matter of Maldari v DiNapoli, 160 AD3d 1323, 1324 [2018]; Matter of Donley v DiNapoli, 153 AD3d 1104, 1104 [2017]). "Where, as here, there is conflicting medical evidence, the Comptroller is vested with the exclusive authority to weigh such evidence and credit the opinion of one medical expert over the other" (Matter of Donley v DiNapoli, 153 AD3d at 1105 [internal quotation marks, brackets and citations omitted]; see Matter of DeCarlis v New York State & Local Retirement Sys., 159 AD3d 1243, 1243 [2018]; Matter of Dee v DiNapoli, 154 AD3d 1042, 1044 [2017]). Finally, "in determining whether a person is permanently disabled, the Comptroller may consider whether proper medical treatment is reasonably and safely available to correct the disability" (Matter of Dee v DiNapoli, 154 AD3d at 1044 [internal quotation marks, brackets and citation omitted]; see Matter of London v DiNapoli, 153 AD3d at 1107).
Petitioner's treating physician, Hasan Chaughtai, who is board certified in physical medicine and rehabilitation, opined that petitioner is permanently incapacitated from the performance of his duties as a police officer due to a restricted range of motion in petitioner's cervical and lumbar spine, disc bulges at, among other locations, L2-3, L3-4 and L-5 to S-1 and a disc herniation at L4-5. Although noting that petitioner eventually was able to return to light-duty work with numerous accommodations, Chaughtai testified that, upon reviewing the description of petitioner's job duties, petitioner could not return to work as a full-duty police officer. Jeffrey Meyer, the orthopedic surgeon who twice evaluated petitioner on behalf of the Retirement System, reached a contrary conclusion. When Meyer first evaluated petitioner in September 2013, he acknowledged that a July 2012 MRI showed the disc bulges and herniation noted by Chaughtai, but found — based upon his observations and physical examination of petitioner — that petitioner displayed "markedly exaggerated cervical and lumbar symptomology" that was "out of line with expected findings" (emphasis omitted)[FN1]. For this reason, Meyer deferred rendering an opinion as to permanency pending a reevaluation of petitioner. When Meyer reevaluated petitioner in October 2014, he noted marked improvement in petitioner's range of motion in his cervical and lumbar spine [FN2]. Meyer also observed that petitioner did not have any sensory or motor deficits in his upper or lower extremities and that a recent MRI "showed improvement in the disc bulges previously noted [at the] L2-3 and L5-S1" levels. As for the residual disc bulging noted at the L4-5 and L5-S1 levels, which Meyer opined was suggestive of "mild degenerative disc disease," Meyer was of the view that petitioner could benefit from core strengthening and possible facet block injections. Based upon these findings, Meyer concluded that there was "no objective evidence of permanent disability" — an opinion that remained unchanged after Meyer was provided with additional reports and records in 2015.
In addition to the testimony and/or reports offered by Chaughtai, Meyer and Jeffrey Shapiro, the record contains documentation from other physicians who evaluated petitioner at various points in time and reached differing conclusions as to the degree of petitioner's disability, the specific deficits noted and the treatment options available. This conflicting medical evidence presented credibility issues for the Hearing Officer and the Comptroller to resolve (see Matter of Aliperti v DiNapoli, 138 AD3d 1378, 1379 [2016]; Matter of Sugrue v New York State Comptroller, 134 AD3d 1382, 1383 [2015]) and, contrary to petitioner's assertion, the testimony [*3]of Chaughtai, as his treating physician, is not entitled to greater weight (see Matter of Arroyo v DiNapoli, 93 AD3d 980, 981 [2012]; Matter of Clark v New York State & Local Employees' Retirement Sys., 45 AD3d 1035, 1036 [2007]). As Meyer's opinion, "which was based upon his examination[s] of petitioner and a review of the pertinent medical records, provided a rational, fact-based opinion upon which the Comptroller was free to rely," we conclude that the Comptroller's determination finding that petitioner is not permanently incapacitated from performing his duties as a police officer is supported by substantial evidence — "notwithstanding other medical evidence in the record that could support a contrary conclusion" (Matter of Studdert v New York State Comptroller, 163 AD3d 1343, 1346 [2018] [internal quotation marks and citation omitted]; see Matter of Aliperti v DiNapoli, 138 AD3d at 1380). This is particularly true given Meyer's testimony that petitioner could benefit from additional reasonable treatment (see Matter of Dee v DiNapoli, 154 AD3d at 1044). Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Clark, Mulvey and Devine, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Meyer's opinion that petitioner was embellishing his symptoms was echoed by Jeffrey Shapiro, who evaluated petitioner at the request of petitioner's employer in November 2013 to determine whether petitioner could return to restricted duty. Like Meyer, Shapiro acknowledged that petitioner's diagnostic studies showed some evidence of disc herniation, but he similarly concluded — based upon the disparity in petitioner's range of motion when directed to perform certain tasks versus the range of motion that he displayed during casual conversation with Shapiro — that petitioner "appear[ed] to be amplifying his complaints."

Footnote 2: Although petitioner attributes this improvement to the fact that his attorney told him to "suck it up" at the second evaluation to avoid additional claims of symptom magnification, this presented a credibility issue for the Hearing Officer and the Comptroller to resolve (see generally Matter of Messina v New York State & Local Employees' Retirement Sys., 102 AD3d 1068, 1069 [2013], lv denied 21 NY3d 855 [2013]).